

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS W. LAUTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 3198 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| PRUDENTIAL INSURANCE CO., ) | |
| OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Dennis Lauth has sued defendant pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"), claiming that he was wrongfully denied long-term disability benefits. The case is before the Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, both motions are denied.

## Background

From March 1997 until August 1, 2003, Lauth worked as a dentist for American Dental Partners ("ADP") and was a participant in the ADP Disability Income Plan ("the Plan"). (Def.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 7, 9.) Prudential is the third-party administrator of the Plan. (*Id.* ¶ 9.)

During his tenure with ADP, Lauth says he suffered from various medical conditions including cervical stenosis and myelopathy, degenerative disk disease and lumbar neuropathy, stenosis, spondylolisthesis and prostate cancer. (Pl.'s LR 56.1(a) Stmt. ¶ 14.) Despite these conditions, Lauth worked thirty-two hours a week for ADP. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶ 7.)

Sometime in June 2003, Lauth was told that he was being terminated for economic reasons. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 14-15.) Lauth's last day of work was August 1, 2003. (*Id.* ¶ 14.)

On July 31, 2003, Lauth applied for disability benefits under the Plan. (*Id.* ¶ 16.) On October 31, 2003, Prudential denied Lauth's claim. (*Id.* ¶ 30.) On March 9, 2004, Lauth appealed that denial through Prudential's administrative review process. (*Id.* ¶ 37.) Lauth's appeal was denied on March 26, 2004. (*Id.* ¶ 40.) Instead of filing another appeal with Prudential, on May 5, 2004 Lauth filed this suit. (*Id.* ¶ 43.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.* "On cross-motions for summary judgment, each movant must . . . satisfy the requirements of Rule 56." *Billings v. Continental Cas. Co.*, No. 02 C 3200, 2003 WL 145420, at *5 (N.D. Ill. Jan. 21, 2003).

**Standard of Review**

Last year, in the course of deciding plaintiff's motion to compel, the Court decided that the standard of review is *de novo*. (*See* Mem. Op. & Order of July 1, 2005 at 5-7.) Prudential says that ruling is wrong and urges the Court to reconsider it.

Though the Court has the inherent power to do so, that ruling is law of the case and, absent a compelling reason, will not be disturbed. *See Avitia v. Metro. Club of Chi.*, 49 F.3d 1219, 1227 (7th Cir. 1995) (stating that judge should not revisit an earlier ruling unless "he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it."). Prudential says the ruling is wrong because it conflicts with the Summary Plan Description ("SPD"), which states:

> This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(Def.'s App. Exs. at AR000151, SPD at 49.)

There are two problems with Prudential's argument. First, Prudential did not raise it in response to the motion to compel. Rather, it argued that the Plan language, not the language of the SPD, mandated deferential review. (*See* Prudential's Mem. Opp'n Pl.'s Mot. Compel at 3-4.) Though there are a number of circumstances that justify reconsideration, failure to make an available argument is not one of them. *See Neal v. Honeywell, Inc.*, No. 93 C 1143, 1996 WL 627616, at *2-3 (N.D. Ill. Oct. 25, 1996) (noting that reconsideration is appropriate when "'the Court has patently misunderstood a party, . . . has made a decision outside the adversarial issues presented to [it], . . .

has made an error not of reasoning but of apprehension. . . . [or when there is] a controlling or significant change in the law or facts since the submission of the issue to the Court.'" (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990) (quotation omitted)), *aff'd*, 191 F.3d 827 (7th Cir. 1999).

Moreover, even if it were an appropriate ground for reconsideration, the SPD language still would not garner Prudential deferential review. In this circuit, when the language of a plan and an SPD conflict, it is the plan language that controls. *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) ("When . . . the plan and the summary plan description conflict, the former governs, being more complete – the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons – unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment."). There is a conflict in this case: the Plan is silent about discretion while the SPD, which explicitly states that it "is not part of the Group Insurance Certificate," purports to reserve discretion to Prudential. *See, e.g., Reinertsen v. The Paul Revere Life Ins. Co.*, 127 F. Supp. 2d 1021, 1027, 1029-30 (N.D. Ill. 2001) (holding that conflict existed between plan that was "silent with respect to . . . discretion" and SPD that said plan administrator had "full, final, complete, conclusive and exclusive discretion"); *Carter v. Gen. Elec. Co.*, No. 98 C 50239, 2001 WL 170464, at *5 (N.D. Ill. Feb. 20, 2001) ("GE cannot use the SPD to confer upon itself the extra-contractual right to make discretionary benefits determinations when the Plan does not grant it this right."). *But see Schwartz v. Prudential Ins. Co.*, No. 04 C 2377, 2005 WL 576857, at *4 (N.D. Ill. Mar. 8, 2005) (holding that the plan and SPD language at issue here do not conflict because "the unequivocal language of the SPD . . . . read in tandem with the Plan's language, confers

discretion on Prudential.") Thus, the SPD language would not help Prudential even if it were a proper basis for reconsideration.

In short, as the Court previously determined, a *de novo* standard of review applies to this case.

## **Exhaustion**

Prudential contends that it is entitled to judgment as a matter of law because plaintiff failed to exhaust his administrative remedies before filing suit. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997) (stating that court has discretion to require claimant to exhaust administrative remedies before filing ERISA suit). Plaintiff argues that Prudential has waived this defense by failing to plead it.

As a general rule, affirmative defenses that are not pleaded are waived. FED. R. CIV. P. 8(c); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987). Even if that rule applies to ERISA cases, Prudential's failure to plead the exhaustion defense "is not fatal" if "the parties argue [it] in the district court." *Id.* Because the parties have thoroughly addressed the exhaustion issue, Prudential's failure to plead it does not constitute a waiver.

Even if it was preserved, plaintiff says the defense has no merit because the Plan documents do not require participants to file administrative appeals. The Plan is indeed silent on the topic of administrative remedies. Moreover, the SPD discusses three levels of administrative appeal, but it does so in permissive language:

> If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), *you or your representative may appeal your denied claim* in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.
>
> . . .
>
> If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), *you or your representative may make a second appeal of your denial* in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.
>
> . . .
>
> If the second appeal of your benefit claim is denied or if you do not receive a response to your second appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), *you or your representative may make a third appeal of your denial* in writing to the Prudential Appeals Committee within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.
>
> . . .
>
> Your decision to submit a benefit dispute to the third level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

(Def.'s App. Exs. at AR0000152-54, SPD at 50-52 (emphasis added).) Thus, the question is whether Prudential's use of such language precludes it from raising the exhaustion defense.

The Seventh Circuit addressed this issue in *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803 (7th Cir. 2000). In that case, neither the plan nor the SPD said that exhaustion of remedies was mandatory. Rather, the plan said that a claimant "may appeal a denied claim within 60 days after [receipt of] the . . . notice of denial," and the SPD said that claimants "have the right to have the Plan review and reconsider [a denied] claim" and "may file suit in a state or federal court." *Id.*

at 806 & n.1. Gallegos did not file a timely appeal of the denial of her claim. *Id.* at 807. Consequently, when she filed an ERISA suit, the plan argued that her claim must be dismissed for failure to exhaust administrative remedies. *Id.* at 807. The district court agreed and dismissed the suit. *Id.*

On appeal, Gallegos argued that the plan should be estopped from asserting failure to exhaust as a defense because "statements in the [SPD] and [denial letter] are misleading in that a plain reading conveys to the average participant that [the] administrative review procedure is wholly voluntary and does not affect the ability of a participant to pursue relief through the federal court system." *Id.* at 808.

The Seventh Circuit concluded that a plan can be estopped from asserting an exhaustion defense if its documents mislead participants about the effect of foregoing administrative review:

> The administrative exhaustion requirement is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court. . . . Rather, the requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record before entering federal court. Allowing an insurance company to mislead a claimant into procedurally defaulting her opportunity for administrative review would contravene the purpose behind requiring administrative exhaustion. . . . . Therefore, we hold that estoppel may be applied to preclude the assertion of failure to exhaust administrative remedies as a defense where that failure results from the claimant's reliance on written misrepresentations by the insurer or plan administrator.

*Id.* at 809-10. However, the court said, a plan will be estopped only if it makes misleading representations to the claimant and the claimant reasonably relies on them to her detriment. *Id.* at 811.

Ultimately, the court concluded that Gallegos could not establish the second element:

7

> Gallegos has not demonstrated that she relied on [the plan's] representations to her detriment because she has not shown that but for [the] representations she would have filed an administrative appeal within the 60-day limitations period. . . . [S]he does not allege that she allowed the time for her appeal to lapse because she had chosen to pursue relief from the denial of her claim through a federal court suit rather than administrative review. If anything, Gallegos's contentions support the conclusion that during the 60-day limitations period she elected not to appeal her claim at all, not that she elected to pursue an avenue of relief with a longer statute of limitations.

*Id.* Because Gallegos had not demonstrated detrimental reliance, the plan was not estopped from raising exhaustion and the court's dismissal of her suit for failure to exhaust was affirmed. *Id.*

The Plan documents in this case are not much more candid than those in *Gallegos*. The Plan itself says nothing about administrative remedies and says only this about lawsuits: "You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law." (Def.'s App. Exs. at AR0000137, Plan at 35.) The SPD says participants "may" make three appeals of a denied claim and suggests only once, and then only by negative implication, that failure to file those appeals may impact subsequent litigation:

> Your decision to submit a benefit dispute to the third level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

(*See id.* at AR0000152-54, SPD at 50-52.)

8

The notices denying plaintiff's claim and his first appeal contain a bit more information, but not a lot. Like the SPD, they say that plaintiff "may" or "[has] the right to" file first and second appeals. (*Id.* at AR000004, AR00010.) They also say:

> If our decision to deny benefits is upheld at the second level of appeal, you may file a voluntary third appeal. The same time frame for the first appeal will apply to the third appeal. You are entitled to receive upon request, sufficient information to make a decision about filing this appeal.
>
> *After completion of the first two levels of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA).* ERISA allows you to file suit for Policy benefits and reasonable attorney's fees. Your decision on whether to file a third appeal will not affect your rights to sue under ERISA.

(*Id.* (emphasis added).) Prudential contends that the italicized language was sufficient to notify plaintiff that he could not file an ERISA suit unless and until he completed two administrative appeals.

The Court disagrees. We interpret the SPD and denial notices according to the "plain meaning [of their language] as understood by an average person." *Gallegos*, 210 F.3d at 810 (citing 29 U.S.C. § 1022(a) ("The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant.")). The SPD and denial notices use only permissive language when discussing the first and second appeals. (*See* Def.'s Exs. at AR000152, SPD at 50 (saying, "you . . . may appeal your denied claim" and "you . . . may make a second appeal"); AR000004 (saying, "[y]ou may again appeal this decision" and "[i]f you elect to [file a second appeal]"); AR000010 ("[y]ou have a right to appeal this decision" and "[i]f you elect to [file a first appeal]" and "you may seek a second appeal").) None of those documents says that the first two appeals are mandatory or clearly explains that any participant who fails to complete them cannot file an ERISA suit. Instead, they say that failure to file a *third* appeal will not preclude a participant from

9

filing suit, statements that – at best – obliquely imply that exhaustion of the first two appeals is a prerequisite to suit. (*See id.* at AR000154, SPD at 52 ("If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies."); AR000004 (After completion of the first two levels of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act . . . . Your decision on whether to file a third appeal will not affect your rights to sue under ERISA."); AR000010 (same).) It is unlikely that an average plan participant could ferret out the asserted exhaustion requirement from these documents. Accordingly, the Court finds that the misleading representation element of estoppel is met.

The detrimental reliance element is also met. Unlike the plaintiff in *Gallegos*, Lauth did not resign himself to the denial of his claim after his unsuccessful appeal. Instead, just a month after receiving the denial notice, he filed this suit. Lauth's dogged pursuit of the claim demonstrates that he would have filed a second appeal, in lieu of this suit, if he had known he was required to do so.

In short, the record establishes that the Plan documents given to Lauth contained misleading statements about the exhaustion requirement and that he relied on those statements to his detriment. Thus, the Court holds that Prudential is estopped from raising the exhaustion defense in this suit.

Even if the elements of estoppel had not been established, the Court would exercise its discretion to excuse Lauth's failure to exhaust. *See Powell v. AT&T Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) ("The rule in this court is clear: the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion."). The exhaustion requirement, as

noted above, "is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court. . . . Rather, the requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record before entering federal court." *Gallegos*, 210 F.3d at 809. In this case, a second appeal would be a meaningless hurdle.

Prudential's reason for rejecting plaintiff's claim was that: (1) he was not in the class of employees covered by the Plan, that is, an "active full-time [e]mployee[]" of ADP when he became disabled; and (2) he was not disabled within the meaning of the Plan, that is, "unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury," resulting in "a 20% or more loss in [his] indexed monthly earnings." (*See* Def.'s App. Exs. at AR000002-4, 9-10, 123-24.) The only evidence Prudential relied upon for its determinations was Lauth's work history and the date of his termination:

> In order to be considered a covered employee under the terms of the policy, Mr. Lauth must be in active employment. As indicated above, active employment means you are working for your employer for at least thirty hours per week and you are performing the material and substantial duties of your regular occupation. The policy also indicates that coverage will end the last day you are in active employment. Since Mr. Lauth's last day of work was August 1, 2003, his LTD coverage ended on August 1, 2003. Mr. Lauth is therefore not a covered employee for a disability which began on August 2, 2003. He cannot be considered "disabled" under the terms of the Policy prior to that date because he was able to perform the material and substantial duties of his regular occupation and did not experience an earnings loss prior to August 2, 2003.

(*Id.* at AR000003-4; *see id.* AR000009-10.) The administrative record on these points was fully developed before the first appeal. (*See id.* at AR000002-3 (stating that Lauth submitted additional medical evidence for consideration on appeal but "the medical information . . . [was] not . . .

considered" because Prudential "determined that [its] decision" that Lauth was not disabled or a member of the covered classes was "appropriate.") Thus, a second appeal would not have fleshed out the record or served any other meaningful purpose.

In this case, the Court would be elevating form over substance by requiring a second appeal. Through inadvertence or design, the Plan documents are misleading. Given that fact, the ease with which the confusion could have been dispelled and the limited value of a second appeal, the Court would not enforce the exhaustion requirement even if it were a viable defense.

**Merits**

Finally, the Court turns to the merits of plaintiff's claim. Prudential denied Lauth's claim on the grounds that he was "no longer a member of the covered classes," which the Plan defined as active, full-time employees who perform the material and substantial duties of their occupation for at least thirty hours per week. (*See id.* at AR000002-4 (citing AR000110-11, 123, Plan at 8-9, 21), 9-10.) That definition of covered classes, however, was changed by a Plan amendment that was effective August 26, 2002. In relevant part, the amendment says:

> 2. The following section replaces the When Does Your Coverage End? section of the General Provisions form:
> 
> **When Does Your Coverage End?**
> - the date the Group Contract or plan is canceled;
> - the date you are no longer a member of the covered classes, except as noted below;
> - the date your covered class is no longer covered;
> - the last day for which you made any required contributions;

- the last day you are in active employment, except as provided under the temporary absence from work and plant closing provisions, or as noted below, or
- the date you are no longer in active employment due to a disability that is not covered under the plan.

If you are no longer a member of the covered class or if your active employment ends, coverage will be extended for 31 days. But, if you become eligible for any similar coverage on an insured or uninsured basis, this extension of coverage will end.

(*Id.* at AR000222-23.) According to the amendment, Lauth was a member of the covered classes until September 1, 2003, thirty-one days after his termination. Thus, contrary to Prudential's decision, he was a member of the covered classes on July 31, 2003, the day he submitted his claim for benefits. Prudential's motion for summary judgment, therefore, must be denied.

That does not necessarily mean, however, that plaintiff is entitled to benefits. Having limited its decision to the covered classes issue, Prudential did not determine whether Lauth was disabled within the meaning of the Plan; that is whether he was "unable to perform the material and substantial duties" of a dentist because of sickness or injury and suffered "a 20% or more loss in [his] indexed monthly earnings" as a result. The medical evidence, which Prudential has not disputed, establishes that Lauth has a variety of impairments. But the record does not even identify the material duties of a dentist, let alone establish that Lauth's impairments render him unable to perform them. Because there are genuine issues of material fact as to whether Lauth is disabled as defined by the Plan, he is not entitled to judgment as a matter of law on his ERISA claim.

## Conclusion

For the foregoing reasons, both parties' motions for summary judgment [doc. nos. 33 & 37] are denied.

**SO ORDERED.**                           **ENTERED:**

MAY - 5 2006

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States District Judge**